[Crim. No. 4141. In Bank.—May 27, 1938.]

THE PEOPLE, Respondent, v. ALBERT DYER, Appellant.

Frederic H. Vercoe, Public Defender, William B. Neeley, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Buron Fitts, District Attorney, Eugene Williams, Deputy District Attorney, for Respondent.

EDMONDS, J.—The defendant who was convicted by a jury upon three separate charges of murder in the first degree, has appealed from the judgments subsequently rendered imposing the death penalty upon him.

By an indictment he was charged with the murder of three children between six and ten years of age. On the morning of June 26, 1937, the children went to a park together for play. They were seen there by various persons during the morning and until about noon. When they failed to return to their homes a search was instituted for them, which continued for two days. Their bodies were then discovered in a ravine about four miles from the park.

Practically all of the evidence connecting the defendant with the crime consists of confessions made by him. The first point relied upon for a reversal of the judgments concerns the cross-examination of a witness who testified to these confessions. Other contentions are that the trial judge erred in admitting certain testimony and in limiting the examination of witnesses.

The record shows that the defendant was arrested on July 4th and that he was questioned in the office of the district attorney that evening. On the following morning the district attorney and the sheriff talked with him. On the next day he was taken before the grand jury and examined by the district attorney. At this time, as on the two previous occasions, the defendant confessed that he had committed the crimes with which he was charged.

A transcript of the proceeding before the grand jury was read in evidence at the trial. It shows that in answer to questions then asked of him by District Attorney Fitts the defendant stated in minute detail not only that he had planned some days in advance to murder and ravish the children, but also how he accomplished his purposes. His story is that of a degenerate fiend. After getting the little girls to leave the park where they were playing on the pretext that he would take them rabbit hunting, he led them to the lonely place in the hills where he carried out his diabolical designs.

▆ Appellant urges that the evidence of his alleged confessions was not admissible, because it was shown that he had been in custody and had been interrogated for a period of ten hours before he made any statements implicating himself in the crime. He did not testify upon the trial and the confessions he made stand uncontradicted. But he claims that he was not allowed to show by cross-examination the circumstances under which he confessed on the night of July 4th.

The district attorney related the conversation he had with the defendant on the morning of July 5th. He stated: "I said to Mr. Dyer that I had been present last evening when questions had been asked him, that I had participated very little in the questioning, but I was just prepared to take from him a statement myself, and before proceeding to take that statement I wanted to say a few things to him. . . . that he had said last evening that he had killed and raped these children; regardless of what he had said last evening, I told him that I wanted him now to tell me the exact situation; if he did not do it then was the time, and we were the people to whom to tell that he had not killed these children; . . . Whereupon Mr. Dyer held his hand up and said, 'Mr. Fitts, before my God I killed them.' " Upon cross-examination the trial judge sustained objections to questions by which the district attorney was asked to relate replies made by the defendant when he was questioned on the night of July 4th. This ruling was correct. Such questions were not within the range of cross-examination. The district attorney testified only to the questions asked the defendant and the answers made by him when he was interrogated the next day. The fact that some of those questions referred to what Dyer had said before did not authorize cross-examination of the district attorney concerning the previous statement or the circum-

stances under which they were made. (Sec. 2048, Code Civ. Proc.; *People* v. *Amaya*, 134 Cal. 531, 538 [66 Pac. 794]; *People* v. *Sehorn*, 116 Cal. 503, 510 [48 Pac. 495]; *People* v. *Cramley*, 23 Cal. App. 340 [138 Pac. 123]; 22 C. J. 633.)

■ The next contention of the defendant relates to the cross-examination of Detective Lieutenant Sanderson, who was called as a witness for the defendant. Lieutenant Sanderson testified that he saw the defendant in the constable's office in Inglewood on the afternoon of July 4th; that he then questioned him and Dyer denied knowing anything about the disappearance of the children. On cross-examination the officer was asked to state the entire conversation which he had with the defendant at that time. The defendant's objection to this question was overruled and the witness thereupon stated the conversation in detail. A similar ruling was made in connection with the cross-examination of the same witness concerning a conversation he had with the defendant at the Hall of Justice later the same day. In response to questions asked by defendant's counsel upon direct examination, the witness was asked when Dyer first stated to him that he had any part in the taking of the children. Lieutenant Sanderson replied that this was about 8 o'clock. Upon cross-examination he was asked to state the conversation in which Dyer admitted his guilt. The defendant's objection to this question was also overruled and the witness was permitted to answer.

The defendant contends that these rulings were erroneous and inconsistent with that made upon the cross-examination of the district attorney. However, the district attorney did not testify as to what had occurred on the previous day when the witness was interrogated. The conversation with the defendant to which he testified included his statement to Dyer that on the previous day Dyer had confessed. This was not testimony of the witness that Dyer had made such statement. But Lieutenant Sanderson was asked on direct examination about two conversations he had with the defendant. Having testified to the substance of the two conversations in reply to these questions, it was proper for the district attorney to ask him on cross-examination to relate the conversations in detail. (Sec. 2048, Code Civ. Proc.; *People* v. *Vukich*, 201 Cal. 290 [257 Pac. 46].)

■ The defendant complains that the examination of Dr. Glenn Myers, medical witness called by him as an expert, was unduly limited; also, that in rebuttal Dr. De River, a physician who testified on behalf of the prosecution, was allowed to relate, over the defendant's objection, a statement which he said the defendant had made to him about his sex life. Another point urged by the defendant is that the trial judge improperly overruled his objection to another question put by the prosecution to Dr. De River. These rulings, viewed from a theoretical standpoint are open to question. But in view of the repeated confessions of the defendant and the corroboration by physical and other evidence of the acts related by him, he was not prejudiced thereby. The entire record clearly shows that there has been no miscarriage of justice; hence the challenged rulings are not a ground for reversal. (Art. VI, sec. 4½, Const.)

■ The appellant also claims that the court erred in allowing the prosecution to introduce testimony respecting the time it took two police officers and two little girls, whose ages were approximately the same as the ages of the three children who were murdered, to walk from the park to the place where the crime was committed. The officers testified that they followed the same route described by the defendant in his confession. This was evidence in the nature of an experiment. The ages and comparative sizes of the children were practically the same as those of the murdered children. The same route was followed in the same weather. Conceding that there would probably be some difference between the time taken by the defendant and the three children he enticed from the park to walk to the scene of the crime and that which elapsed when the police officers took two other children over the same route, this was a matter for the consideration of the jury. The defendant might well argue to the jury upon the weight which they should give to such evidence, but it was clearly admissible. (*People* v. *Halbert*, 78 Cal. App. 598 [248 Pac. 969].)

■ Finally, the defendant contends the trial judge erred in admitting into evidence the confessions of the defendant because they contain so many discrepancies as to wholly discredit their verity. There are a number of inconsistencies in the details of the events related by the defendant on different occasions, but he repeatedly stated that he murdered the

children. One cannot read the complete statements which the defendant made without reaching the certain conclusion that the evidence overwhelmingly supports the jury's verdicts.

The judgments are, and each of them is, affirmed.

Curtis, J., Waste, C. J., Seawell, J., and Langdon, J., concurred.

Houser, J., concurred in the judgment.